UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LONDON

Civil Action No.   6:25-CV-036-REW

| | |
|---|---|
| **COMMUNITY TRUST BANK, INC.** | **PLAINTIFF** |
| V. | **COMPLAINT TO QUIET TITLE AND FOR DECLARATORY AND OTHER RELIEF** |
| **UNITED STATES OF AMERICA, by and through UNITED STATES DEPARTMENT OF AGRICULTURE and NATURAL RESOURCES CONSERVATION SERVICE** | **DEFENDANT** |

Serve:  United States Attorney for the
Eastern District of Kentucky
U.S. Attorney's Office
260 W. Vine Street, Suite 300
Lexington, KY 40507

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Assistant Attorney General for Administration
U.S. Department of Justice
Justice Management Division
950 Pennsylvania Avenue, NW
Room 1111
Washington, DC 20530

United State Department of Agriculture
Brooke Rawlings, Secretary
1400 Independence Avenue
Washington, DC 20250

**\*\*\*\*\*\*\*\*\*\***

The Plaintiff, Community Trust Bank, Inc., for its Complaint against the United States of America, respectfully states as follows:

## PARTIES

1. Community Trust Bank, Inc. ("CTB"), is a Kentucky banking corporation with its principal office located in Pikeville, Kentucky.

2. The United States of America ("U.S.") is the Federal government, which acted in this case by and through the U.S. Department of Agriculture ("USDA") and the Natural Resources Conservation Service ("NRCS") as the USDA's administering division.

## JURISDICTION AND VENUE

3. This court has jurisdiction over this matter pursuant to 28 United States Code Sections 1346 and 2409a, as an action to quiet title to land located in Jackson County, Kentucky, and as an action concerning the application, interpretation, and scope of a Conservation Easement burdening the property.

4. Venue is appropriate in the United States District Court for the Eastern District of Kentucky and in the London Division of that Court pursuant to 28 U.S.C. Section 1391, as the real property underlying the claim to quiet title and allegedly burdened by the Conservation Easement is located in Jackson County, Kentucky, in the Eastern District and in the London Division of the Court.

## FACTS COMMON TO ALL CLAIMS

5. In December of 2014, CTB entered into a loan and related note (collectively, the "loan") with Phoenix Products, Inc., a Kentucky Corporation ("Phoenix Products").

6. To secure the loan, Phoenix Products entered into mortgages on numerous parcels of property physically located in the Eastern District of Kentucky and in the London Division. Exhibit A.

7. Among the parcels of land was property identified in the applicable mortgage as "Property 11A," which property was made up of three separately-described and previously-divided tracts or parcels (the "Property"), being parcels 1, 2, and 3 of Property 11A.

8. CTB filed its mortgages in the County land records, which perfected its interests in the Property, as well as the other parcels of land that were subject to the mortgages. Exhibit A.

9. Parts of Property 11A were subject to a Conservation Easement created pursuant to the Healthy Forests Reserve Program (the "Easement") entered into by Phoenix Products with the U.S., with the NRCS of the USDA as the administering division. Exhibit B, Easement.

10. The Easement covered parts of each of the three distinct tracts of real property that comprised Property 11A, which tracts were separately divided prior to the creation of the Easement.

11. The Easement included legal descriptions of these properties, and recognized that there were legally-distinct parcels and the Easement was not on a single undivided tract of real property, but instead on a number of distinct and separate tracts.

12. Exhibit B to the Easement referred to the "[E]asement being split into three distinct tracts." Exhibit B, Easement at its Exhibit B (Baseline Inventory Report).

13. The Easement included a term under which Phoenix Products and its successors were permitted to subdivide the Property with the consent of the U.S., but did not include a definition of "subdivision."

14. The Easement did not include a requirement that all of the "distinct tracts" had to be owned by the same person or entity. Such a requirement would constitute a significant and perpetual restriction on alienation of the "distinct tracts" that is not stated in or implied by the

3

terms of the Easement. Such a restriction is not necessary to effectuate the purpose of the Easement.

15. The U.S. did not require that the tracts be re-deeded or otherwise unified into a single tract of real property as a condition of the Easement, but the terms of the Easement provide that the Easement was "split" into "three distinct tracts."

16. The Easement did not cover all parts of all three tracts, but burdened only part of each "distinct tract." The requirement that the three "distinct tracts" be owned by the same person or entity is a restriction on alienation of the Property that restricts all parts of each tract, including those parts that were not included within the Easement

17. After the creation of the Easement and after entry into and perfection of CTB's mortgages, Phoenix Products filed for protection under the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Kentucky at London (the "Bankruptcy Action").

18. The Easement and any interest or right of the U.S. to have all of the Property, including the three "distinct tracts" that make up Property 11A, owned by a single person or entity or to the effective unification of the three "distinct tracts" into a solitary "property" with one owner would have been a restriction on alienation of property of Phoenix Products' Bankruptcy Estate and significantly affected and reduced the value of property of Phoenix Products' Bankruptcy Estate.

19. The U.S. did not appear in the Bankruptcy Action, did not assert an interest in the assets of Phoenix Products' Bankruptcy Estate, including the Property, did not assert a right to common ownership or effective unification of the "distinct tracts", and did not object to an Order lifting the stay so that CTB could proceed with a foreclosure sale of the Property, along with

4

other parcels owned by Phoenix Products that were subject to CTB's mortgage, to satisfy its loan to Phoenix Products.

20. In the Bankruptcy Action, CTB sought and obtained an Order lifting the stay so that it could foreclose on all of the property subject to its mortgage, including Property 11A, in Madison Circuit Court (the "state court action") where some of the property was located.

21. The U.S. did not appear in the state court action to assert an interest in the Property, or object to the sale.

22. The Order of Sale in the state court action provided for the sale of the property at issue by first offering a sale of the various parcels separately and then offering the properties for sale as a whole. This could have resulted in the various tracts underlying the Easement being owned by a different person or entity, possibly including the three "distinct tracts" that made up Property 11A, had they been offered for sale separately from one another.

23. The U.S. did not object to the Order of Sale or to its requirement that the parcels that were subject to CTB's mortgage be offered for sale separately before being offered for sale as a whole, nor did it claim that the properties underlying the Easement had to be commonly-owned and that the properties could only be sold together to a single buyer under the terms of the Easement.

24. The state court action proceeded to a foreclosure sale pursuant to CTB's mortgage and the tracts were offered for sale separately and then together. As part of that, Property 11A was offered for sale with all three tracts being offered together, but separate from other parcels of property that were subject to CTB's mortgage.

25. At the sale, CTB purchased all of the properties offered for sale as a whole, which included Property 11A, which was offered for sale with all three of the distinct tracts of Property sold together.

26. The U.S. waived any right that may have existed to require common ownership of the parcels underlying the Property by not asserting in the Bankruptcy Action that it had an Easement and that the terms of the Easement mandated unified ownership of all "distinct tracts" or otherwise restricted alienation of the "distinct tracts" of Property separately.

27. The U.S. waived any right that may have existed to require common ownership of the "distinct tracts" by not asserting in the state court action that it had an Easement and that the terms of the Easement mandated unified ownership of all "distinct tracts" or otherwise restricted alienation of the "distinct tracts" of the Property separately, and by not objecting to the Order of Sale that allowed all of the property underlying CTB's mortgage to be first offered for sale as separate and distinct tracts, which could have included each of the three tracts that comprised Property 11A.

28. After it purchased all of the properties securing its mortgage at the foreclosure sale, CTB sold tract 2 of Property 11A as a separate and distinct tract, while retaining ownership of tracts 1 and 3. Title to tract 2 is not under common ownership with title to tracts 1 and 3 of Property 11A.

29. After conveyance of tract 2, CTB attempted to sell tracts 1 and 3 to a single buyer, who was not the same as the owner of tract 2.

30. The U.S. objected to the sale of tracts 1 and 3, and has taken the position that a sale of any one of the "distinct tracts" that make up Property 11A is a "subdivision" of the

6

Property in violation of the requirements of the Easement, even though those parcels were separate and distinct tracts prior to creation of the Easement.

31.     The U.S. has taken the position that the sale of tract 2 of Property 11A violated the alleged terms of the Easement and has demanded that CTB cure the alleged violation, which presumably would require CTB to re-acquire tract 2 or to sell tracts 1 and 3 to the owner of tract 2. Exhibit C, letter from NRCS dated February 11, 2025.

32.     The U.S. has issued a "cease and desist" letter, and has threatened to sue and assert a claim for attorneys' fees. Exhibit C.

33.     The position of the U.S. places a cloud on the title to tract 2, which is not owned by CTB, and has clouded CTB's title to tracts 1 and 3, which continue to be owned by CTB.

34.     The position of the U.S. and the cloud it has placed on title to tracts 1 and 3 caused the potential sale of tracts 1 and 3 to be rescinded.

35.     The position of the U.S. that all of the "distinct tracts" have to be commonly owned, which is not a term of the Easement, would effectively extinguish the three "distinct tracts" and unify them into one large tract of land.

36.     The position of the U.S. that all of the "distinct tracts" have to be commonly owned, which is not a term of the Easement, is a perpetual and significant restriction on alienation of the "distinct tracts" which is not stated or implied by the terms of the Easement, nor required to effectuate its purpose.

37.     The position of the U.S. that all of the "distinct tracts" have to be commonly owned, which is not a term of the Easement, would extend the geographic limitations of the Easement to burden those portions of the "distinct tracts" that were never made a part of the Easement by effectively extinguishing three "distinct tracts" and unifying them into one large

tract of land. This would impact portions of the property that were outside of the Easement to the same extent of those parts that were within the Easement.

## COUNT I
### (Action To Quiet Title)

38. CTB incorporates all prior Paragraphs as if set forth fully herein.

39. The Easement and the U.S.'s interest in Property 11A and/or the U.S.'s interest in the three "distinct tracts" being treated as a unified whole with required common ownership was extinguished by the foreclosure sale of Property 11A.

40. The Easement and/or the U.S.'s interest in the three "distinct tracts" being treated as a unified whole with required common ownership was extinguished by the U.S.'s failure to assert its interest during the course of Phoenix Products' Bankruptcy Action and/or the subsequent state court action.

41. The U.S.'s position that the three distinct tracts must be commonly owned and/or that a prohibited subdivision includes any transfer or sale to different owners of pre-existing tracts effectively unifies three "distinct tracts" into a single tract, which is not required or provided for in the Easement, and extends the geographic limits of the Easement to portions of the property that are outside of its terms, all of which creates a cloud on the title of all three tracts and portions of the tracts outside of the confines of the Easement.

42. The U.S.'s claimed interest in the "distinct tracts" is a perpetual restriction on alienation of the "distinct tracts" that is not stated or implied by the terms of the Easement, nor necessary to effectuate its purpose.

43. The U.S.'s position that there is a violation of the Easement as to tract 2 that must be cured effectively precludes any sale or transfer of tract 2 other than to unify ownership with

tracts 1 and 3, and creates a cloud on title to tract 2, including on portions of that tract that lie outside of the confines of the Easement.

44. The U.S.'s position that there would be a violation of the Easement as to tract 1 and 3 if there is a sale of the tracts to any entity or person other than the owner of tract 2 precludes any sale or transfer of tracts 1 and 3 other than to unify ownership with tract 2, and creates a cloud on title to tracts 1 and 3, including on portions of the tract that lies outside of the confines of the Easement.

45. Pursuant to 28 United States Code Section 2409a, CTB is entitled to a Judgment of this Court quieting its title to tracts 1 and 3 of the Property, eliminating any requirement that CTB unify ownership or re-acquire tract 2 or sell tracts 1 and 3 to the owner of tract 2, and extinguishing the U.S.'s claimed interest in the Property.

## COUNT II
### (Declaratory Judgment)

46. CTB incorporates all prior Paragraphs as if set forth fully herein.

47. In the event that the Court does not extinguish the Easement or the U.S.'s claimed interest in common ownership or unification of the three "distinct tracts," an actual controversy exists between CTB and the U.S. on the meaning of the term "subdivision" in the Easement and whether it includes a sale or transfer of a "distinct tract" that pre-existed the creation of the Easement without the sale of all others.

48. An actual controversy exists as to whether CTB's sale of tract 2 of the Property was a "subdivision" of the Property that must be cured.

49. CTB is entitled to, and requests a Declaratory Judgment, that it may sell any of the distinct tracts separate and apart from any of the other tracts, that the sale of tract 2 did not violate the terms of the Easement, and that "subdivision" as used in the Easement means a

division of the tracts from how they existed at the time the Easement and does not apply to a sale or transfer of distinct tracts that existed prior to creation of the Easement.

WHEREFORE, CTB respectfully requests:

A.    Trial by Jury on all Counts so triable;

B.    A Judgment quieting title to the Property;

C.    A Judgment extinguishing the United States' interest in the Property, including the Easement, a requirement of common ownership, or a claim of effective unification of distinct tracts into one whole;

D.    A Judgment declaring that the term "subdivision" as used in the Easement does not prohibit the sale or transfer of one or more parcels of the Property to buyers or transferees, provided that a sale constitutes the entirety of a parcel as it existed at the time of the creation of the Easement, if valid;

E.    A Judgment allowing a sale of tracts 1 and 3 of the Property to a different person or entity that the owner of tract 2;

F.    A Judgment declaring that there is no violation of the Easement that CTB must cure;

G.    An award of costs, fees, and expenses, including attorneys' fees; and

H.    Any and all other relief to which it is or comes to be entitled.

        Respectfully submitted,

        /s/ Richard A. Getty
        RICHARD A. GETTY
            and
        DAVID T. FAUGHN

        THE GETTY LAW GROUP, PLLC
        The Offices at City Center
        100 West Main Street, Suite 200
        Lexington, Kentucky  40507
        Telephone:  (859) 259-1900
        Facsimile:   (859) 259-1909
        E-Mail:  rgetty@gettylawgroup.com
        E-Mail:  dfaughn@gettylawgroup.com

        COUNSEL FOR PLAINTIFF,
        COMMUNITY TRUST BANK, INC.

dtfpldg0505